February 23, 1978

**78-10 MEMORANDUM OPINION FOR THE DEPUTY GENERAL COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**Flood Disaster Prevention Act (42 U.S.C. § 4106)— Mortgage Loans—Effect of Statute on Executive Order**

This is our response to your request for our opinion on the relationship between Executive Order No. 11988 and § 703(a) of the Housing and Community Development Act of 1977 (Pub. L. No. 95-128; 91 Stat. 1111). Section 703(a) has replaced § 202(b) of the Flood Disaster Prevention Act of 1973 (87 Stat. 975).

Your General Counsel's opinion reaches the following five conclusions: (1) Executive Order No. 11988 applies to the Federal agencies regulating financial institutions; (2) it requires them to minimize harmful results of their activities in flood plains; (3) this result is not contrary to the intent of § 703(a); (4) this result is consistent with the Flood Disaster Protection Act of 1973 and other statutes; and (5) the order is therefore valid and has the force of law. More specifically, the opinion concludes that Executive Order No. 11988, 42 F. R. 26951 (1977), requires the agencies regulating banking to minimize flood damage by prohibiting regulated institutions from making loans secured by real property within a flood plain unless flood insurance is available.

After a careful examination of § 703(a), the Flood Disaster Prevention Act, and their legislative histories, we conclude that § 703(a) was intended to deny the Federal Government authority to prohibit federally regulated private lenders from making mortgage loans in a flood plain. The statute takes precedence over Executive Order No. 11988 to the extent of any conflict. Thus, the Executive order may not require regulatory agencies to prohibit those lenders from making such loans.

As enacted in 1973, § 202(b) of the Flood Disaster Prevention Act (Act) (42 U.S.C. § 4106(b)), provided as follows:

> (b) Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, savings and loan associations, or similar institutions shall by regulation prohibit such institutions on and after July 1, 1975, from making, increasing, extending, or renewing any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Secretary as an area having special flood hazards, unless the community in which such area is situated is then participating in the national flood insurance program.[1]

This section was part of a comprehensive scheme to utilize the Federal flood insurance program as a means of limiting flood losses by controlling housing development in flood plains. Thus, in addition to the provision set forth above, the Act barred Federal financial assistance for construction in flood plains in communities where flood insurance was not available.[2] It also prohibited Federal assistance or private loans for real property not covered by available flood insurance.[3] For a community to be eligible for flood insurance, it must have a land use code that restricts development in areas vulnerable to flooding.[4] By limiting the availability of Federal or private funds for construction in communities ineligible for flood insurance, these provisions served the statutory purpose of inducing States and localities "to participate in the flood insurance program and to adopt adequate flood plain ordinances with effective enforcement provisions consistent with Federal standards to reduce or avoid future flood losses."[5]

In October 1977, § 703(a) of the Housing and Community Development Act amended § 202(b) of the Flood Disaster and Prevention Act to read as follows:

> (b) In addition to the requirements of section 1364 of the National Flood Insurance Act of 1968, each Federal instrumentality described in such section shall by regulation require the institutions described in such section to notify (as a condition of making, increasing, extending, or renewing any loan secured by property described in such section) the purchaser or lessee of such property of whether, in the event of a disaster caused by flood to such property, Federal disaster relief assistance will be available to such property.

---

[1]Subsequently enacted exceptions are immaterial for the purpose of this opinion.

Section 3(a)(5) of the Act, 42 U.S.C. § 4003(a)(5), defines "federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks, saving and loan associations, or similar institutions" to mean the Federal Reserve Board of Governors, the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, the Federal Home Loan Bank Board, and the National Credit Union Administration.

[2]42 U.S.C. § 4106(a).

[3]42 U.S.C. §§ 4012(a)(b).

[4]*See* National Flood Insurance Act of 1968, as amended, §§ 1315, 1361; 42 U.S.C. §§ 4022, 4102.

[5]42 U.S.C. § 4002(b)(3). *See also* S. Rept. 93-583, 93d Cong., 1st sess. (1973), at 18-19.

Thus, it deleted the express requirement that bank regulatory agencies prohibit lenders from making secured loans on flood plain real estate in communities where flood insurance is not available. Instead, the agencies were directed to require lenders to notify borrowers whether disaster relief would be available.[6] It does not, however, contain an explicit requirement that agencies either permit or prohibit the making of real estate loans by regulated lenders in flood plain areas not covered by the Federal insurance program. We think that the legislative history of the amendment removes any serious question as to what was intended by the modification.

Section 703(a) was introduced as a floor amendment by Senator Eagleton, who stated that its purpose was to permit localities to reject land use controls and develop flood plains with mortgage loans from private lenders.[7] He clarified this point in the following colloquy with Senator Danforth:[8]

Mr. DANFORTH. . . . As I understand this amendment, and I ask Senator EAGLETON if he will bear me out in this, he is not objecting to the Federal Government conditioning the offering of Federal flood insurance or Federal grants or Federal loans or what amounts to land use planning.

What he is objecting to, as I understand it, is the Federal Government purporting to tell banks with no connection at all other than, for example, FDIC coverage, banks that are located in a community, people who have lived in the community all their lives, that they are not able to make loans in flood plain areas.

Mr. EAGLETON. The Senator is absolutely correct.

Just permitted to fit the loan money to a business deriving in that area if they think it is a good, prudent loan, the bank is permitted to make the loan [sic]. That is all the amendment does.

Mr. DANFORTH. Under the law as written now, if a Federal bureaucrat designates an area as being within a flood plain, then a bank which is FDIC-covered, or insured, is prohibited by the present law from making a loan to a business located in that flood plain.

Mr. EAGLETON. The Senator is exactly correct.

Mr. DANFORTH. And this is exactly the kind of overreach by the Federal bureaucracy that we were objecting to in offering this amendment.

Mr. EAGLETON. I thank my colleague. I think he has summed it up very convincingly.

Even the opponents of the measure agreed that it would remove the Federal Government's ability to prohibit such loans as a means of compelling the

---

[6] *See also* National Flood Insurance Act of 1968, § 1364 (88 Stat. 739; 42 U.S.C. § 4104(a).
[7] 123 Cong. Rec. S. 8971-72 (June 6, 1977).
[8] 123 Cong. Rec. S. 8972 (June 6, 1977).

adoption of local flood plain use ordinances.[9] This discussion is the only legislative history pertinent to § 703(a).

The legislative history is unequivocal. Both the sponsor and the opponents of § 703(a) understood that the existing law cut off private regulated mortgage financing in order to compel localities to adopt your Department's approved land use controls on flood plain development. Both understood that the effect of § 703(a) would be to permit private mortgage loans in flood plains despite the lack of acceptable land use controls. The explanation of the sponsor of a floor amendment is strong evidence of legislative intent. *United States* v. *Dickerson,* 310 U.S. 554, 557 (1940); *Richbourg Mfg. Co.* v. *United States,* 281 U.S. 528, 536 (1930). Indeed, in this instance it is unrefuted. Hence, it is apparent that by amending § 202(b) of the Flood Disaster Prevention Act, Congress intended to prevent Federal restrictions on private mortgage lending from being used as a method for achieving the Act's purposes.[10]

Executive Order No. 11988 was promulgated in May 1977, nearly 4 months before the enactment of the Housing and Community Development Act. The preamble cites that it is issued in furtherance of the National Environmental Policy Act (42 U.S.C. § 4321 *et seq.*), the National Flood Insurance Act of 1968 (42 U.S.C. § 4001 *et seq.*), and the Flood Disaster Prevention Act. Section 1 of the order, in pertinent part, directs each Federal agency to act ''to reduce the risk of flood loss, to minimize the impact of floods on human safety, health, and welfare, and to restore and preserve the natural and beneficial values served by flood plains in carrying out its responsibilities for . . . (2) providing Federally . . . assisted construction or improvements; and (3) conducting Federal activities and programs affecting land use, including, but not limited to water and related land use planning, regulating, and licensing activities.'' Under § 2(a)(2), agencies allowing an ''action'' to occur in a flood plain must consider alternatives to avoid ''adverse effects and incompatible developments'' in flood plains. Section 2(d) requires each agency, ''as allowed by law,'' to amend its regulations to conform to the order.

Although the Executive order does not, on its face, prohibit the making of these types of loans, we agree, for purposes of this discussion, that the order may be read to require bank regulatory agencies to prohibit mortgage loans in flood plains that are not governed by a federally approved land use code. The preamble of the order cites the Flood Disaster Protection Act as authority, and it furthers the congressional policies and purposes in § 2 of that Act (42 U.S.C. § 4002). The Act's and the order's definition of ''agency'' extends to the bank regulatory agencies. Moreover, this interpretation of the order would be com-

---

[9]*See* 123 Cong. Rec. S. 8973-74 (Senator Proxmire); S. 8974-75 (Senator Brooke); S. 8975-76 (Senator Williams).

[10]The congressional statements of policy and purpose in § 2 of the Flood Disaster Prevention Act, 42 U.S.C. § 4002, were not amended. However, later specific amendments to a statute modify earlier general statements of purpose. *See generally, Int'l. Longshoremen's Warehousemen's Union* v. *Wirtz,* 170 F. (2d) 183 (9th Cir. 1948); *Callahan* v. *United States,* 122 F. (2d) 216 (D.C. Cir. 1941).

pletely consistent with § 202(b) of the Act at the time the order was promulgated.

Thus, its application would in our view be contrary to the intent of Congress manifested in the subsequent amendment of § 202(b). In such a conflict, the statute controls. Both the provision of flood insurance and disaster relief and the regulation of lending institutions are normally subjects of domestic legislation.[11] The Constitution, of course, has vested ''all legislative powers'' over these subjects in Congress. The President can ordinarily regulate the affairs of private persons by Executive order only on the basis of some express or implicit statutory authority. *Youngstown Sheet and Tube Co.* v. *Sawyer*, 343 U.S. 579, 587-89 (1952); *United States* v. *Guy W. Capps, Inc.*, 204 F. (2d) 655, 658-60 (4th Cir. 1953), *aff'd on other grounds*, 348 U.S. 296 (1955); *Independent Meat Packers Assn.* v. *Butz*, 526 F. (2d) 228, 234-36 (8th Cir. 1975); *United States* v. *Yoshida International*, 526 F. (2d) 560, 583 (C.C.P.A. 1975).[12] By revising § 202(b), it is our opinion that Congress clearly intended to prohibit the bank regulatory agencies from using their powers to prevent unregulated development in flood plains. While it retained the objections of the Flood Disaster Protection Act, Congress nevertheless intended to withdraw the Executive's power to use that method of attaining them. *See, Youngstown Sheet and Tube Co.* v. *Sawyer, supra*, 343 U.S., at 587-89, 599-604 (Frankfurter, J., concurring).[13]

Basically, the question turns on congressional intent in replacing § 202(b) with § 703(a) of the Housing and Community Development Act. Your General Counsel concluded that the amendment simply resurrected the *status quo* before passage of § 202(b) in 1973. If this were all that could fairly be concluded from the 1977 amendment, we would agree that the President has the power to prohibit altogether the making of these types of loans. It would be clearly appropriate for the Executive to fill in the details of a program which Congress has defined only in its broad outline. We do not think, however, for the reasons stated above, that § 703(a), when read as it must be with its legislative history, can fairly be understood to have left to executive discretion the question of prohibiting regulated institutions from approving loans in these circumstances.

---

[11]*See* U.S. Constitution, Art. I, § 8, cl. I, 3, 18.

[12]The cases cited in your opinion are not to the contrary. Most involve Executive orders for which the courts found underlying statutory authority. *E.g.*, *Letter Carriers* v. *Austin*, 418 U.S. 273 (1974); *Gnotta* v. *United States*, 415 F. (2d) 1271 (8th Cir. 1969); *Farkas* v. *Texas Instrument, Inc.*, 375 F. (2d) 629 (5th Cir. 1967); *Farmer* v. *Philadelphia Electric Co.*, 329 F. (2d) 3 (3d Cir. 1964). *Porter* v. *United States*, 473 F. (2d) 1329 (5th Cir. 1973), involved the Executive order creating the Warren Commission. Although the point was not discussed, authority to create the Commission can be found in the President's constitutional duty to ''take care that the laws be faithfully executed.'' *See* U.S. Constitution, Art. II, § 3. None involves an order contrary to a statute.

[13]We are aware of the cases that state that the Executive order requiring nondiscrimination by Government contractors is valid despite the repeated failure of Congress to confer such authority by statute. *E.g.*, *Farmer* v. *Philadelphia Electric Co.*, 329 F. (2d) 3, 7-9 (3d Cir. 1964). In the case you have brought us, however, Congress first granted express statutory authority and then withdrew it, and the legislative intent to deny the authority is sufficiently clear to prevent the action contemplated under the Executive order.

Insofar, then, as Executive Order No. 11988 is read as imposing such a prohibition, we do not think it may be enforced.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*